J-A16013-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JACK EDWARD SATTERFIELD | : | |
| | : | |
| Appellant | : | No. 1474 MDA 2019 |

Appeal from the Judgment of Sentence Entered August 6, 2019
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s):  CP-22-CR-0005794-2018

BEFORE:  PANELLA, P.J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, P.J.:                **FILED JULY 08, 2020**

Jack E. Satterfield, III appeals from the judgment of sentence, entered on August 6, 2019, of 28½ to 63 years' imprisonment, in the Court of Common Pleas of Dauphin County, following his open guilty plea to three counts of homicide by vehicle while driving under the influence ("DUI"),[1] three counts of homicide by vehicle,[2] three counts of accident involving death or personal injury,[3] and one count each of DUI commercial vehicle,[4]  DUI general

---

[1] 75 Pa.C.S.A. § 3735(a).

[2] 75 Pa.C.S.A. § 3732(a).

[3] 75 Pa.C.S.A. § 3742(a).

[4] 75 Pa.C.S.A. § 3802(f)(1)(i).

impairment,[5] reckless driving,[6] careless driving,[7] and restrictions on alcoholic beverages.[8]  At the time of the guilty plea, the Commonwealth withdrew three counts of accident involving death or personal injury not properly licensed.[9] On appeal, Appellant challenges both the discretionary aspects and legality of his sentence. After review, we affirm.

On October 12, 2018, Appellant was driving a tractor trailer with a partial load from New Jersey to Wisconsin at an excessive speed. Appellant admitted he had agreed to make the journey in approximately a day and half, a time not permitted by law. During the approximately two-hour trip between New Jersey and central Pennsylvania, Appellant stopped at a restaurant, where he consumed three margaritas and a glass of beer with his dinner. He also purchased a six-pack of beer and a bottle of hard liquor from a nearby store, and drank some of it while driving. While driving on Interstate 83 outside of Harrisburg, Appellant crashed into cars stopped in a traffic jam. Appellant made no attempt to brake.

_____

[5] 75 Pa.C.S.A. § 3802(a)(1).

[6] 75 Pa.C.S.A. § 3736(a).

[7] 75 Pa.C.S.A. § 3714(a).

[8] 75 Pa.C.S.A. § 3809(a).

[9] 75 Pa.C.S.A. § 3742.1(a).

Appellant was able to exit his vehicle. However, he did not try to help the injured and, instead, left the scene and attempted to blend into a crowd watching the aftermath of the accident from the parking lot of a nearby motel. After police received a photograph of Appellant, one of the officers observed him in the crowd and, with another officer, approached Appellant. Appellant then attempted to flee but the officers apprehended him.

As a result of the crash, a young father and his baby daughter burned to death, while another young man died on the scene in the presence of his fiancée. Other drivers and passengers suffered serious injuries. Police officers at the scene observed Appellant smelled of alcohol and slurred his speech. Appellant consented to a blood draw and, approximately one hour after the incident, his blood alcohol content ("BAC") was .152%.

On June 4, 2019, Appellant entered an open guilty plea to the previously mentioned charges. The trial court ordered a pre-sentence investigation report (PSI). Sentencing took place on August 6, 2019. Prior to imposing sentence, the trial court stated it had read the PSI, as well as a sentencing memoranda prepared by defense counsel. It also entertained multiple victim impact statements, testimony from Appellant's friends and family members, and both a written and oral statement from Appellant.

The trial court sentenced Appellant above the aggravated range on all three counts of homicide by vehicle while DUI. It also sentenced Appellant in the aggravated range on all three counts of homicide by vehicle. Lastly, it

ordered Appellant to serve all the sentences consecutively, arriving, as noted above, at an aggregate sentence of 28½ to 63 years.

Appellant filed a timely motion to modify sentence, which the trial court denied on August 26, 2019. The instant, timely appeal followed.[10]

In his first two issues on appeal, Appellant challenges the discretionary aspects of his sentence. In his first issue, he argues the trial court abused its discretion by imposing manifestly excessive sentences, which fell within and beyond the aggravated range of the Pennsylvania Sentencing Guidelines. Appellant specifically contends the trial court failed to consider relevant sentencing criteria, mitigating circumstances, and his rehabilitative needs.[11]

_____

[10] On September 11, 2019, the trial court ordered Appellant to file a concise statement of errors complained of on appeal. Appellant filed a timely Rule 1925(b) statement on October 2, 2019; on November 6, 2019, the trial court issued an opinion.

[11] Appellant also avers the trial court did not provide a sufficient explanation on the record for the sentences above the aggravated range and the sentences in the aggravated range. He further contends the trial court improperly considered factors already accounted for in the guidelines in imposing these sentences and solely focused on the seriousness of the offenses. **See** Appellant's Brief, at 18-25. However, Appellant did not raise these issues in his post-sentence motion, only claiming the sentence was harsh and excessive and the trial court failed to consider mitigating factors and rehabilitative needs. **See** Motion to Modify Sentence, 8/14/19, at 3-5. We have held an appellant waives any discretionary aspects of sentence issue not raised in a post-sentence motion. **See Commonwealth v. Mann**, 820 A.2d 788, 794 (Pa. Super. 2003) (finding claim sentencing court did not put sufficient reasons to justify sentence on record waived where issue was not raised in post-sentence motion). Thus, we will not entertain these arguments.

Appellant's Brief, at 18-23. In his second issue he complains the sentence is excessive because it is consecutive. *Id.* at 23-25. We disagree.

"Generally, a plea of guilty amounts to a waiver of all defects and defenses except those concerning the jurisdiction of the court, the legality of the sentence, and the validity of the guilty plea." *Commonwealth v. Reichle*, 589 A.2d 1140, 1141 (Pa. Super. 1991). "The determination of whether discretionary aspects of sentencing may be challenged after a guilty plea is entered depends upon the actual terms of the plea bargain, specifically, to what degree a sentence agreement has been reached." *Commonwealth v. Dalberto*, 648 A.2d 16, 18 (Pa. Super. 1994).

Where the plea agreement provides specific penalties, an appeal from a discretionary sentence will not stand; however, where the plea agreement provides for no sentencing restrictions, the entry of a guilty plea will not preclude a challenge to the discretionary aspects of sentencing. *See id.* at 20. When the plea agreement falls somewhere between a negotiated plea and an open plea, we must determine the effect of the hybrid plea agreement on the right to challenge the discretionary aspects of his sentence. *See id.* at 21. Here, Appellant entered an open guilty plea, which did not purport to limit the sentencing court's discretion in any way. Therefore, he may challenge the discretionary aspects of the sentence. *See id.*

The principles that guide our review are as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal

absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal. An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence.

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

> \* \* \* \*

> A substantial question will be found where an appellant advances a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms which underlie the sentencing process. At a minimum, the Rule 2119(f) statement must articulate what particular provision of the code is violated, what fundamental norms the sentence violates, and the manner in which it violates that norm.

*Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa. Super. 2014) (citations omitted).

Here, Appellant preserved his claim by filing a motion to modify sentence and including a Pa.R.A.P. 2119(f) statement in his brief. Therefore, we will consider his remaining arguments.

- 6 -

In his first issue, Appellant complains his sentences for homicide by vehicle while DUI and homicide by vehicle were harsh and excessive and the trial court failed to consider mitigating circumstances and his rehabilitative needs. These claims, taken together, have been found to raise a substantial question. *See Commonwealth v. Dodge*, 77 A.3d 1263, 1272 (Pa. Super. 2013); *Commonwealth v. Downing*, 990 A.2d 788, 793 (Pa. Super. 2010).

However, the substance of these claims lack merit. Firstly, the trial court had the benefit of a PSI. "Where pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988). Moreover, the trial court specifically directed the state prison to provide Appellant with skills training, mental health counseling, and drug and alcohol counseling. N.T. Sentencing, 8/06/19, at 83. Thus, the trial court was well aware of Appellant's rehabilitative needs and addressed them.

Appellant maintains his sentence is harsh and excessive because the trial court sentenced him outside the aggravated range on the homicide by motor vehicle while DUI counts, and in the aggravated range on the homicide by motor vehicle counts. We disagree.

With respect to an outside the guideline sentence, we have stated:

> When evaluating a challenge to the discretionary aspects of sentence . . . it is important to remember that the sentencing guidelines are advisory in nature. If the sentencing court deems it appropriate to

> sentence outside of the guidelines, it may do so as long as it offers reasons for this determination. [O]ur Supreme Court has indicated that if the sentencing court proffers reasons indicating that its decision to depart from the guidelines is **not unreasonable**, we must affirm a sentence that falls outside those guidelines.
>
> A sentencing court, therefore, in carrying out its duty to impose an individualized sentence, may depart from the guidelines when it properly identifies a particular factual basis and specific reasons which compelled [it] to deviate from the guideline range.

*Commonwealth v. Shull*, 148 A.3d 820, 836 (Pa. Super. 2016) (citations and quotation marks omitted, emphasis in original). Appellant also complains about his sentences in the aggravated range. However, this Court may only vacate an aggravated range sentence if the "case involves circumstances where the application of the guidelines would be clearly unreasonable[.]" 42 Pa.C.S.A. § 9781(c)(2).

Here, the trial court had the benefit of a PSI, a sentencing memorandum from the defense, the victim impact statements of some of the surviving victims and friends and family of the decedents; it also heard testimony of witnesses on behalf of Appellant, Appellant's own statements during allocution, and saw a video and pictures of the incident. *See* N.T. Sentencing, 8/06/19, at 4, 7-80. It acknowledged Appellant had both mental health and drug and alcohol issues. *See id.* at 83.

However, the court also highlighted the utterly reckless nature of Appellant's conduct in drinking not only when he stopped to eat but in going to a liquor store, buying more alcohol, and literally drinking while driving a

tractor trailer. *See id.* at 80. It noted Appellant's failure to even try to slow the tractor trailer. *See id.* It also pointed to Appellant's failure to render aid and his attempt to flee the scene. *See id.* at 81. Lastly, it emphasized the victim impact statements, which this Court has reviewed, and which demonstrated the ongoing mental health issues suffered by the survivors and the utter devastation Appellant's actions caused the families of the victims. *See id.* at 81. Therefore, immediately prior to imposing sentence, the trial court explained the basis for the sentence and why it felt it was necessary to go outside the guidelines for homicide by vehicle while DUI and sentence in the aggravated range for homicide by vehicle. *See id.* at 80-81.

Accordingly, Appellant's claim the sentencing court abused its discretion in sentencing him outside the guidelines and in the aggravated range of the guidelines is meritless. *See Commonwealth v. Walls*, 926 A.2d 957, 966-68 (Pa. 2007) (holding that so long as trial court imposed individualized sentence that was reasonable there was no abuse of discretion); *Commonwealth v. Smith*, 206 A.3d 551, 568-69 (Pa. Super. 2019), *appeal denied*, 217 A.3d 202 (Pa. 2019) (affirming outside guideline and aggravated range sentences where trial court considered PSI, appellant's rehabilitative needs, need to protect community, and nature and gravity of offense).

In his second issue, Appellant maintains his sentence is manifestly excessive because the trial court ordered the sentences to run consecutively. The decision on whether to run sentences consecutively or concurrently

lies within the sound discretion of the sentencing court. Long standing precedent of this Court recognizes that 42 Pa.C.S.A. § 9721 affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. A challenge to the imposition of consecutive rather than concurrent sentences does not present a substantial question regarding the discretionary aspects of sentence. We see no reason why [a defendant] should be afforded a volume discount for his crimes by having all sentences run concurrently.

However, we have recognized that a sentence can be so manifestly excessive in extreme circumstances that it may create a substantial question. When determining whether a substantial question has been raised, we have focused upon whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct in this case.

*Zirkle*, 107 A.3d at 133-34 (quotation marks and citations omitted).

Thus, "[t]he imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." *Commonwealth v. Moury*, 992 A.2d 162, 171-72 (Pa. Super. 2010) (citation omitted). Herein, Appellant has not asserted any extreme circumstances. We conclude the trial court acted within its discretion in imposing consecutive sentences after reviewing the facts of the case, Appellant's history, relevant sentencing factors, and the PSI report. Appellant's second issue does not merit relief.

In his third issue, Appellant challenges the legality of his sentence. He argues his sentence on the three counts of accident involving death or

personal injury is illegal because, "the applicable statute contemplates a single offense for each accident regardless of the number of person injured or killed in such accident." Appellant's Brief, at 25. We disagree.

"Issues relating to the legality of a sentence are questions of law, as are claims raising a court's interpretation of a statute. Our standard of review over such questions is *de novo* and our scope of review is plenary." ***Commonwealth v. Hawkins***, 45 A.3d 1123, 1130 (Pa. Super. 2012) (citation omitted). Even though Appellant did not raise this issue at his sentencing hearing, he has not waived this argument on appeal. ***See Commonwealth v. Foster***, 17 A.3d 332, 345 (Pa. 2011).

We acknowledge:

> Our task is guided by the sound and settled principles set forth in the Statutory Construction Act, including the primary maxim that the object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa.C.S.[A.] § 1921(a). In pursuing that end, we are mindful that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.[A]. § 1921(b). Indeed, "[a]s a general rule, the best indication of legislative intent is the plain language of a statute." In reading the plain language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage," while any words or phrases that have acquired a "peculiar and appropriate meaning" must be construed according to that meaning. 1 Pa.C.S.[A.§] 1903(a). However, when interpreting non-explicit statutory text, legislative intent may be gleaned from a variety of factors, including, *inter alia*: the occasion and necessity for the statute; the mischief to be remedied; the object to be attained; the consequences of a particular interpretation; and the contemporaneous legislative history. 1 Pa.C.S.[A.] § 1921(c). Moreover, while statutes generally should be construed liberally, penal statutes are always to be construed strictly, 1

- 11 -

Pa.C.S.[A] § 1928(b)(1), and any ambiguity in a penal statute should be interpreted in favor of the defendant.

Notwithstanding the primacy of the plain meaning doctrine as best representative of legislative intent, the rules of construction offer several important qualifying precepts. For instance, the Statutory Construction Act also states that, in ascertaining legislative intent, courts may apply, *inter alia*, the following presumptions: that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable; and that the legislature intends the entire statute to be effective and certain. 1 Pa.C.S.[A.] § 1922(1),(2). Most importantly, the General Assembly has made clear that the rules of construction are not to be applied where they would result in a construction inconsistent with the manifest intent of the General Assembly. 1 Pa.C.S.[A.] § 1901.

***Commonwealth v. Wilson***, 111 A.3d 747, 751 (Pa. Super. 2015) (case citation omitted).

At issue here is the construction of 75 Pa.C.S.A. § 3742, accidents involving death or personal injury, which provides in pertinent part:

**General rule.--**The driver of any vehicle involved in an accident resulting in injury or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section 3744 (relating to duty to give information and render aid). Every stop shall be made without obstructing traffic more than is necessary.

**Penalties.—**

* * * *

(3)(i) If the victim dies, any person violating subsection (a) commits a felony of the second degree, and the sentencing court shall order the person to serve a minimum term of imprisonment of not less than three years and a mandatory minimum fine of $2,500, notwithstanding any other provision of law.

75 Pa.C.S.A. § 3742(a) and (b)(3)(i).

Appellant concedes our Supreme Court has held "in all criminal cases, the same facts may support multiple convictions and separate sentences for each conviction except in cases where the offenses are greater and lesser included offenses." ***Commonwealth v. Anderson***, 650 A.2d 20, 22 (Pa. 1994); Appellant's Brief, at 27. However, he argues the plain language of the statute shows,

> [t]he 'facts' applicable to the statute is the driver must be 'involved in *an* accident resulting in injury or death of any person." (Emphasis added). It is stated in the singular, both for *an accident* and *any person*. An actor cannot remain (or leave) the scene of an accident on multiple occasions. The offense is committed when the actor fails to remain at the scene of the accident, a singular occurrence.

Appellant's Brief, at 28 (emphasis in original). Appellant fails to cite to any law in support of his interpretation.

The Commonwealth disagrees with Appellant's assertion. Initially, it notes this Court has upheld multiple convictions under Section 3742 arising from a single occurrence. ***See*** Commonwealth's Brief in 11-12. The Commonwealth also maintains Appellant's grammatical focus on the use of the singular phrase "an accident," is improper because it "seeks to limit the statute's applicability more narrowly than the language . . . requires." Commonwealths' Brief, at 12. It notes many statutes use the singular construction and, despite this, we interpret the construction of the statute to

allow for multiple sentences when there is more than one victim. *Id.* at 12-13.

We have thoroughly reviewed the parties' arguments, and while we agree the plain language of section 3742 is subject to multiple constructions, Appellant's interpretation is clearly at odds with the legislature's intent in amending the statute in 2014 and with this Court's precedent. Accordingly, we must reject Appellant's interpretation. *See Wilson*, 107 A.3d at 751.

In *Commonwealth v. Kinney*, 863 A.2d 581, 583-85 (Pa. Super. 2004), a jury convicted the appellant of two counts of accidents involving death or personal injury arising from a single occurrence. In *Kinney*, the appellant sideswiped a car which such force the second car became involved in a head-on collision with a third vehicle, this resulted in serious injury to the people in the second car and killed the driver and passenger in the third vehicle. *See id.* at 583. The appellant left the scene but was ultimately forced to stop and call 911 because of the extensive damage to her vehicle. *See id.* at 584.

On appeal, the appellant made several different challenges to the sufficiency of the evidence but her main argument involved her contention there were two separate accidents at play; she claimed the first accident, where she hit the second car did not cause the second accident where the second car hit the third vehicle and this second unrelated accident was the cause of all of the injury and death. *See id.* at 584-85. This Court disagreed,

holding the evidence was sufficient to demonstrate this was a **single** occurrence, wherein the appellant's collision with the second vehicle, caused it to collide with the third vehicle, and, therefore, it was the appellant's actions which caused the injury and death. ***See id.*** at 585. Thus, despite finding only a single accident, we upheld **both** convictions for accident involving death or personal injury. ***See id.***

Moreover, in 2014, the Pennsylvania legislature amended section 3742 to increase the penalties for accidents involving death or personal injury. ***See*** 75 Pa.C.S.A. § 3742(b)(3)(1) (effective August 29, 2014). Our review of the discussion of the amendment shows the legislature amended the statute to resolve what it believed to be a long-standing and serious problem regarding sentencing discrepancies between homicide by vehicle while DUI and accidents involving death or personal injury. ***See*** S. No. 45, 2014 Sess., at 1-76 (Pa. 2014).

In particular, the legislature was concerned this disparity in sentencing created an incentive for the person causing the accident to flee the scene to avoid being tested for DUI because being charged only with an offense under section 3742 carried a lesser sentence. ***See id.*** The legislature believed increasing the penalty under Section 3742(b)(3)(i) to be the same as that for homicide by vehicle while DUI would resolve this problem. ***See id.***

Appellant's interpretation would eviscerate this resolution. If we were to adopt Appellant's position, while there would be no incentive to flee an

accident involving a single victim, there would be great incentive to flee the scene of a more serious accident because the defendant could be sentenced under multiple counts of homicide by vehicle while DUI if he remained at the scene but only a single count of accident involving personal injury or death if he fled. There is nothing in the legislative history which would demonstrate it intended to give a volume discount in cases of accidents involving multiple cars and victims. Such an interpretation is both contrary to the legislative intent and to our general principles underlying sentencing, which clearly permit multiple sentences for the same crime in cases involving multiple victims and disfavors volume discounts. ***See Anderson***, ***supra*** at 2; ***Wilson***, 107 A.3d at 751, ***Zirkle***, 107 A.3d at 133-34. Appellant's third claim lacks merit.

Accordingly, for the reasons discussed above, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/08/2020

- 16 -